**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gulf Coast Bank & Trust Company, | No. CV-25-04855-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| GTG Logistics Incorporated, et al., | |
| Defendants. | |

In exchange for security interests and payments, Gulf Coast Bank purchased debts owed to several related trucking, logistics, and warehousing entities under "factoring agreements." Gulf Coast alleges that after the factoring relationship deteriorated, the contracting entities and their owners began routing business and customer payments through an affiliated entity—defendant Container Boss—to circumvent Gulf Coast's rights under the agreements. Gulf Coast brought this action against the contracting entities and Container Boss to recover amounts owed to it under the factoring agreements. Container Boss moves to dismiss for lack of personal jurisdiction, but Gulf Coast has made a prima facie showing that Container Boss is the alter ego of the contracting entities. The motion to dismiss is denied.

## I. Background

Gulf Coast Bank & Trust Company is a Louisiana bank engaged in the factoring business. (Doc. 1 at 2.) Defendants Goodwin Trucking Group Inc. and Goodwin Companies, LLC provide trucking services, and defendant GTG Logistics provides

warehousing services. (Doc. 1 at 4.) Joe and Tricia Goodwin are a married couple domiciled in New Jersey and one or both of them are the sole members of various defendant entities. (Doc. 1 at 2–3.) Defendant Container Boss "purports to offer warehouse services like GTG Logistics from the same warehouse in New Jersey," and the Goodwins are also its only two members.[1] (Doc. 1 at 3, 7.)

This case arises from Gulf Coast's factoring relationship with Goodwin Trucking, Goodwin Companies, and GTG Logistics (collectively the "GTG Entities"). In factoring, a "factor" (*e.g.*, Gulf Coast) purchases accounts receivable from a business known as the "factoring client" (*e.g.*, any of the GTG Entities). (Doc. 1 at 3–4.) The customer who owes payment on the account is the "account debtor." (Doc. 1 at 3–4.) As a factor, Gulf Coast advances funds to factoring clients by purchasing their accounts and taking a security interest in their assets to secure repayment. (Doc. 1 at 4.) Once Gulf Coast purchases an account, the factoring client no longer retains any legal or equitable interest in that account, and Gulf Coast obtains the exclusive right to receive payment from the account debtor. (Doc. 1 at 4.) Account debtors are notified that the factoring client's accounts have been assigned to Gulf Coast and that payments originally owed to the factoring client should be made directly to Gulf Coast. (Doc. 1 at 4.)

In the summer of 2025, account debtors began disputing invoices from the GTG Entities. (Doc. 1 at 6.) As a result, under the factoring agreements, the GTG Entities were required to repurchase disputed invoices from Gulf Coast. (Doc. 1 at 6.) Accordingly, Gulf Coast made buyback requests to the GTG Entities. (Doc. 1 at 6.) But payment problems continued even after Gulf Coast and the GTG Entities attempted to resolve issues related to the disputed invoices, because account debtors also began disputing new invoices that Gulf Coast purchased from the GTG Entities. (Doc. 1 at 6.) For example, JinkoSolar, the GTG Entities' largest customer, disputed its entire $913,831 balance of invoices based on

[1] Defendants contend GTG Logistics operates out of 201 Bay Ave. in Port Elizabeth, New Jersey, rather than 340 S. Stiles St. in Linden. (Doc. 33 at 5.) Gulf Coast notes that GTG Logistics uses the Linden address as its "Main Business Address" on its certificate of incorporation, that GTG email signature blocks identify a "Linden Warehouse" at 340 S. Stiles St. (Doc. 30 at 4–5.)

allegedly fraudulent or misrepresented charges by the GTG Entities. (Doc. 1 at 6.) Around the same time, Joe Goodwin also allegedly received $81,027 from account debtor Warrior Trucking that should have been paid to Gulf Coast. (Doc. 1 at 6.) After these events, Gulf Coast stopped purchasing new invoices from the GTG Entities in August 2025. (Doc. 1 at 7.) Gulf Coast claims it is owed approximately $1.2 million in unpaid invoices. (Docs. 1 at 8; 30 at 12–13.)

Although Gulf Coast stopped purchasing new invoices, it was entitled to collect the $1.2 million from all accounts receivable, including any invoices Gulf Coast had not specifically acquired. (*See* Doc. 1 at 4, 8, 10–11.) In other words, Gulf Coast was entitled to collect from future invoices even if the GTG Entities performed the work after Gulf Coast stopped buying their invoices. To avoid paying Gulf Coast, the GTG Entities and the Goodwins allegedly began routing the GTG Entities' business through Container Boss. (Doc. 1 at 7.) Before that point, GTG Logistics regularly issued invoices to its customers TQL and JinkoSolar for warehousing services, and, because of the factoring agreements, those customers typically paid Gulf Coast directly. (Doc. 1 at 7.) Gulf Coast alleges that after it stopped buying the GTG Entities' invoices, it stopped receiving payments from TQL and JinkoSolar. (Doc. 1 at 7.) Container Boss then allegedly began invoicing customers such as JinkoSolar for the same work provided by the GTG Entities to circumvent any financial obligations to Gulf Coast. (Doc. 1 at 7–8, 17–18.)

Gulf Coast alleges the Container Boss invoice to JinkoSolar was remarkably similar to the GTG Entities' invoices and appeared to concern services performed by the GTG Entities rather than Container Boss. (Doc. 1 at 8.) Container Boss had never invoiced JinkoSolar before November 2025, and JinkoSolar told Gulf Coast that "GTG was now invoicing under Container Boss." (Doc. 1 at 8.) The Container Boss invoice to JinkoSolar bore the name "Container Boss" at the top right, but instructed JinkoSolar to pay "GTG Warehouse" and identified Goodwin Trucking in the shipping information. (Doc. 1 at 16-17, 50–52.) JinkoSolar also allegedly received credit memos belonging to the GTG Entities and reduced its payments to Container Boss by the amount of those credits. (Doc.

1 at 17.) Gulf Coast alleges the payments to Container Boss should have gone to it under the factoring agreements. (Doc. 1 at 8, 17.)

Because of this alleged scheme, Gulf Coast seeks to hold Container Boss liable under an alter-ego theory. (Doc. 1 at 16–18.) Gulf Coast filed suit in Arizona because the factoring agreements contain Arizona forum-selection clauses and Arizona choice-of-law provisions. (Doc. 1 at 24, 31, 38.) A valid forum-selection clause is sufficient to establish consent to personal jurisdiction in the selected forum. *See S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007); *Productive People, LLC v. Ives Design*, No. CV-09-1080-PHX-GMS, 2009 WL 1749751, at *1 (D. Ariz. June 18, 2009). There is no dispute the GTG Entities are subject to personal jurisdiction in Arizona or that Arizona law applies.

The complaint makes abundantly clear that Gulf Coast believes Container Boss is an alter ego of the other entities. It uses the phrase "alter ego" twenty-seven times, often explicitly describing Container Boss as "a successor-in-interest and/or alter ego for the GTG Entities." (Doc. 1 at 10.) Overlooking these alter-ego allegations, Container Boss moves to dismiss for lack of personal jurisdiction because Container Boss itself has no contacts with Arizona. (Doc. 17.) After Gulf Coast pointed out that Container Boss ignored the alter-ego allegations that provided a basis for jurisdiction (Doc. 30 at 7), Container Boss inexplicably argued in reply that alter ego was "irrelevant" and a "factual issue[]" that could only be addressed at trial (Doc. 33 at 3–4).

## II.   Standard

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff bears the burden of establishing that jurisdiction is proper. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Where the motion is decided on written materials, the plaintiff need only make a prima facie showing of jurisdictional facts, and uncontroverted allegations in the complaint are taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). But a plaintiff may not simply rest on the bare allegations of the complaint. *Id.* Although conflicts between statements contained in affidavits are resolved in the plaintiff's favor, "disputed allegations in the

complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020), *overruled on other grounds by Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (en banc).

### III.  Analysis

Container Boss's motion to dismiss establishes it is confused regarding the governing law. It is well-established that "the veil separating affiliated corporations may . . . be pierced to exercise personal jurisdiction" over an entity that otherwise lacks forum contacts. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071–72 (9th Cir. 2015). The Ninth Circuit has explicitly discussed veil-piercing between alter-ego entities in the context of assessing personal jurisdiction. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). *Harris Rutsky* squarely held an entity's forum contacts "may be imputed to" a different entity where the two are alter egos. *Id.* at 1134. Gulf Coast relies on that theory here, arguing that undisputed personal jurisdiction over the GTG Entities extends to the alter ego (Container Boss) of those entities.

When a plaintiff seeks to disregard the corporate form, including by using an alter-ego theory, Arizona law requires it to show a unity of control and that observing the corporate form would sanction a fraud or promote injustice. *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991); *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). Unity of control may be shown through factors including (but not limited to) common officers or directors, undercapitalization, failure to maintain separate corporate identity, diversion of corporate property for personal use, lack of corporate formalities, failure to maintain books and records, and commingling as to financing and payment of expenses. *Gatecliff*, 821 P.2d at 728; *In re Keesling*, No. 2-10-BK-00433-CGC, 2012 WL 5868883, at *2 (D. Ariz. Nov. 19, 2012). Arizona courts emphasize the corporate form is not disregarded lightly. *Chapman v. Field*, 602 P.2d 481, 483 (Ariz. 1979).

Gulf Coast has made a prima facie showing of unity of control between Container Boss and the GTG Entities. Most notably, considerable factual allegations support commingling of financing and expenses and failure to maintain separate corporate

identities. To start, shortly after Gulf Coast stopped factoring the GTG Entities' invoices in August 2025, several of the GTG Entities' customers stopped paying Gulf Coast. (Doc. 1 at 7.) Around that time, Container Boss began invoicing those same customers for the same services historically provided by the GTG Entities. (Doc. 1 at 7–8.) The invoice Container Boss presented to at least one of those customers, JinkoSolar, allegedly looked remarkably similar to the GTG Entities' prior invoices and concerned the same services historically provided by the GTG Entities at the exact same warehouse. (Doc. 1 at 8.) The invoice bears the name "Container Boss" in one part, but instructions directed check payments to "GTG Warehouse," and the shipping report is labeled "Goodwin Trucking Group Inc." (Doc. 1 at 16–17, 50–52.) That invoice also lists Container Boss's address as 340 South Stiles Street—the same address used by several or all of the GTG Entities. According to Gulf Coast, these strategies were part of an effort to avoid the GTG Entities' contractual obligations to Gulf Coast. (Doc. 1 at 7.)

Even JinkoSolar appeared confused about whether Container Boss and the GTG Entities were distinct, allegedly telling Gulf Coast that "GTG was now invoicing under Container Boss." (Doc. 1 at 8.) Further demonstrating blurred corporate identities, JinkoSolar received credit memos belonging to the GTG Entities in connection with Container Boss invoices and then reduced its payment to Container Boss by the amount of those GTG credits. (Doc. 1 at 17.) And despite these invoices, Container Boss allegedly had no contract with JinkoSolar and was not actually rendering services to it; instead, the GTG Entities were merely using Container Boss on invoices to avoid paying Gulf Coast. (Doc. 1 at 17.) These allegations support a reasonable inference that Container Boss and the GTG Entities disregarded corporate separateness by commingling finances and expenses—moving invoices, receivables, customer credits, and payment instructions across entity lines as convenient. *See Gatecliff*, 821 P.2d at 728; *In re Keesling*, 2012 WL 5868883, at *2.

On top of those allegations, the GTG Entities and Container Boss share common ownership and management. The owners of Container Boss, Joe and Tricia Goodwin, also

maintain ownership and management roles with the GTG Entities: Joe signed the GTG Logistics factoring agreement as "owner" and Goodwin Trucking's factoring agreement as "president," and Tricia owns Goodwin Companies. (Docs. 1 at 2, 25, 32, 39.) Common ownership and shared management alone are generally insufficient to establish alter ego, *see Ranza*, 793 F.3d at 1073–74, but they are relevant to unity of control when combined with other facts showing corporate separateness was disregarded. *See Gatecliff*, 821 P.2d at 728; *In re Keesling*, 2012 WL 5868883, at *2. Taken together, Gulf Coast's allegations are enough at this stage to show unity of control between Container Boss and the GTG Entities.

Gulf Coast has also made a prima facie showing that observing corporate separateness would promote injustice. The factoring agreements gave Gulf Coast the right to collect payments from the GTG Entities' account debtors and a security interest in the GTG Entities' accounts receivable. (Doc. 1 at 4–5, 23–24.) After the GTG Entities' invoices became disputed and Gulf Coast cut off funding, Container Boss allegedly began billing the GTG Entities' customers for the same services while still using GTG remittance information, GTG shipping information, and GTG customer credits. (Doc. 1 at 7–8, 16-17.) Taking those allegations as true, this goes beyond a failure to pay contractual debts: respecting Container Boss's corporate separateness would allow the GTG Entities to continue performing the same work, generating receivables through an affiliated entity while avoiding Gulf Coast's factoring rights. At this stage, those allegations satisfy the fraud-or-injustice prong. *See Gatecliff*, 821 P.2d at 728.

Gulf Coast has made a prima facie showing that Container Boss is the alter ego of the GTG Entities. Because the GTG Entities are subject to personal jurisdiction in Arizona through the factoring agreements' forum-selection clauses, Gulf Coast has sufficiently alleged personal jurisdiction extends to Container Boss. *Harris Rutsky*, 328 F.3d at 1134-35.

/

/

Accordingly,

**IT IS ORDERED** Container Boss's motion to dismiss (Doc. 17) is **DENIED**. The case management deadlines established in the order dated March 16, 2026, apply equally to Container Boss.

Dated this 28th day of May, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**

- 8 -